## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

GLORIA O. SALCEDO, on her own behalf )
and as mother and next of friend of A.S., )
and as mother and next of friend of J.S., )
                                      )
     Plaintiffs, )     **Civil Action No.**
                                      )     **06-40250-FDS**
     v. )
                                        )
TOWN OF DUDLEY, STEVEN )
WOJNAR, JAMES HUTCHINSON, )
ANTHONY DIDONATO, DAVID )
CARPENTER, DEAN POPLAWSKI, )
PAUL CEPPETELLI, and OTHER AS )
YET UNNAMED OFFICERS OF THE )
DUDLEY POLICE DEPARTMENT, )
individually and in their official capacities )
as Chief of Police and police officers of the )
Town of Dudley, )
                                      )
     Defendants. )
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

      This is a civil rights case arising out of a police response to a domestic dispute.  Plaintiff

Gloria Salcedo, a resident of Dudley, Massachusetts, called a 911 emergency line in November

2003 to report that she was suffering physical abuse at the hands of her husband.  She alleges that

when the police arrived, they did nothing to her husband.  Instead, they arrested her for hitting

him with a baby monitor (which, she contends, she did in self-defense); assisted her husband in

obtaining a restraining order against her; and filed a criminal complaint against her for assault and

battery and assault and battery with a dangerous weapon.  As a result, she alleges, she lost custody of her children for three years and suffered various emotional injuries.

Salcedo has filed suit on behalf of herself and her two minor sons, contending that the police responded as they did due to gender and ethnic discrimination.  She seeks damages under 42 U.S.C. § 1983 and various other federal and state theories of recovery.   Defendants have moved for summary judgment, contending that the claims are time-barred and that the evidence does not support her claims.

This matter involves allegations of serious misconduct.  In essence, plaintiff contends that she was a victim of domestic abuse; that the police did not take it seriously; that they did nothing to the perpetrator; and that they acted as they did due to gender and ethnic prejudice.  Unfortunately, however, plaintiff has done grave harm to her own cause.  She waited nearly three years before attempting to file a complaint, and then her counsel simply placed it in the mail rather than delivering it to the courthouse—where it arrived two days after the expiration of the limitations period on most of her claims.  Furthermore, her counsel did not make a serious effort to respond to defendants' motion for summary judgment, ignoring some issues entirely and taking an offhand and somewhat casual response to others.

Notwithstanding the nature of the claims, this Court cannot revive time-barred claims or simply ignore procedural defaults.  Nor is it the role of the Court to sift through the evidence looking for reasons to keep claims alive when plaintiff herself has declined to do so. Accordingly, and for the reasons set forth below, defendants' motion will be granted.

## I.    __Factual Background__

The Court recites the facts in the light most favorable to plaintiff, the non-moving party,

except as noted.

As of mid-2003, Gloria Salcedo was a resident of Dudley, Massachusetts. She and Oscar Salcedo were married, but separated.[1] The couple had two young sons.

The marriage included a history of physical abuse.[2] While separated, the Salcedos often made custody hand-offs of their sons at the Dudley police station. As a result, several of the officers were familiar with the family.

In August 2003, Gloria, accompanied by another woman, asked the Dudley police for assistance in obtaining a restraining order against her husband. The friend gave a statement to the police about physical abuse by Oscar that she had witnessed. The order was granted.

On the morning of Saturday, November 22, 2003, Gloria called the 911 emergency line to report that Oscar was being abusive, and asked police to come to her home. Officers James Hutchinson, Anthony DiDonato, and Paul Ceppetelli responded to the call.

According to Gloria, Oscar was the aggressor.[3] Oscar told the police when they arrived that she had hit him in the back with a baby monitor swung from a cord. Gloria acknowledges that she hit him with the baby monitor, but contends it was in self-defense. She told the police that he scratched her, which they apparently did not believe. Gloria also contends that Oscar cut up one of her fur coats and that he tried to destroy her phone to prevent her from calling the police.

---

[1] At some point in 2003, Gloria filed for divorce. She was fearful that Oscar would find out and become physically violent with her, so she withdrew the divorce filing.

[2] Gloria had previously obtained at least one restraining order against Oscar.

[3] Gloria and Oscar dispute what happened that morning, and who initiated the violence.

The police initially placed Oscar in handcuffs, but then released him and arrested Gloria. She was handcuffed in front of her two young sons and led out of the house into a police cruiser in front of her neighbors.

At the police station, the police chained Gloria to a bar in the booking room.  Several of the officers spoke in a friendly and laughing manner with Oscar, who had come to the station to request a restraining order against Gloria.  Officer Paul Ceppetelli contacted the on-call judge at the Dudley District Court for the restraining order.  The judge granted it for a two day period, until a hearing could be held Monday morning.

After several hours at the police station, Gloria was booked on charges of assault and battery and assault and battery with a dangerous weapon.  Her brother came to the police station to post her bail and she was released.  She went directly to the emergency room at St. Vincent's Hospital in Worcester, where she was treated for her injuries.  She also met with a Department of Social Services representative, who began an investigation.

On Sunday, November 23, the DSS issued a report concluding in substance that Oscar had been the aggressor; that Gloria had been the victim; that the two children were now alone with Oscar; and that he had a history of physical abuse toward the children.  That afternoon, a DSS representative "spoke with the police and determined this will be a 10-day investigation."  (Ex. 21).  The record does not indicate the name of the officer to whom she spoke or the details of the conversation.

At 9:00 a.m. on Monday, November 24, the Dudley District Court held a hearing on the restraining order that Oscar had requested.  The judge issued the restraining order, which extended through February 5, 2004.  The order required Gloria to stay away from the house.

4

That same day, Officer David Carpenter signed a criminal complaint charging Gloria with assault and battery and assault and battery with a dangerous weapon (the baby monitor). The clerk-magistrate of the District Court found probable cause as to both offenses.

Gloria contends that the police failed to advise either the judge handling the request for a restraining order or the clerk-magistrate handling the criminal complaint any information concerning the results of the DSS investigation. The police thus did not tell the court that DSS had concluded that Oscar was the aggressor (with the obvious implication being that Gloria hit Oscar with the baby monitor in self-defense), and did not include an explanation of Oscar's history of physical abuse towards Gloria or the restraining orders she had previously obtained against him. Gloria contends that several of the officers knew about the couple's history due to prior encounters, and that in any event they should have looked at police records and databases to discover the history of restraining orders and abuse allegations before booking her on Saturday. She alleges that their failure to do those things, and their further failure to provide that information to the court on Monday, was due to gender and ethnic prejudice. She also alleges that the Dudley police force systematically failed to train its officers on the proper procedures for handling domestic violence cases, including how to determine which party is the aggressor and whether the victimized party needs protection.

After the events of November 22-24, 2003, Gloria and Oscar continued to have intermittent involvement with the Dudley Police. In January 2004, Gloria was permitted to go to the house where Oscar and the children were living to pick up some furniture and personal belongings. The police were summoned after she arrived, and helped to ensure that Oscar behaved properly and did not mistreat Gloria while she was moving her things.

Also in January 2004, Oscar complained to the police that the phone service in the house had been shut off in violation of the restraining order. Officer Carpenter called Verizon, the telephone service provider, and was told that the service was in Gloria's name and had been shut off for non-payment. Carpenter filed an application for a complaint against Gloria for violating the restraining order. At the hearing on February 18, 2004, the magistrate refused, due to insufficient evidence, to issue a complaint.

In February 2004, Gloria reported to Officer Carpenter that her three-year-old son, while in the custody of Oscar and while he was out of the room, had wrapped a cord from a window blind around his neck and suffered injuries. Officer Carpenter filed a "Report of Abuse or Neglect" with the DSS against Oscar.

On December 1, 2004, Gloria obtained a new restraining order against Oscar, which was served on him by Officer Poplawski.

On February 4, 2005, Gloria was arrested in the Dudley police station parking lot based on a warrant that had been issued when she failed to appear a few days earlier at a hearing concerning her November 22, 2003 arrest. She was released a short while later on $240 bail.

On December 6, 2005, in the Dudley District Court, Gloria admitted to sufficient facts to support the charge of assault and battery. That charge was continued without a finding, and Gloria was sentenced to one year of probation, which she served and completed on December 6, 2006. The charge for assault and battery with a dangerous weapon was dismissed.

In March 2006, Gloria complained to Officer Chandler Boyd of the Dudley Police that Oscar had hit one of the children with is belt. Boyd submitted an application for criminal complaint against Oscar.

In 2007, after the present case was filed, Oscar was arrested and jailed for physically abusing his girlfriend.  Gloria then regained full custody of her sons.

## II.    **Procedural Background**

On November 22, 2006—the Wednesday before the Thanksgiving holiday—Gloria's attorney mailed her complaint to the clerk's office of this Court.  Thursday was Thanksgiving, and the Court was closed.  The complaint was received, and docketed as filed, on Friday, November 24, 2006.

The complaint alleges eight counts, including claims for (1) violation of her rights to equal protection under the Fifth and Fourteenth Amendments of the United States Constitution [presumably under 42 U.S.C. § 1983]; (2) defamation; (3) violations of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H-I; (4) intentional infliction of emotional distress; (5) selective enforcement and selective prosecution [presumably under § 1983]; (6) "deliberate indifference to the need for training" [presumably under § 1983]; (7) conspiracy to violate her civil rights under 42 U.S.C. § 1985(2) and (3); and (8) "refusal to prevent wrongs committed against plaintiffs" under 42 U.S.C. § 1986.

In substance, plaintiff alleges that because she is a Latino woman, defendants treated her differently from others who were similarly situated.  She contends that the officers believed Oscar's version of events (despite a lack of evidence), because he is a man.  She also points to two other instances in the fall of 2003 where Dudley police were called to the scene of potential domestic violence incidents, and claims that the police behaved more appropriately to the white woman caller (in one incident) and white man caller (in the other incident) than they did towards her.

Defendants have moved for summary judgment as to all counts.

## III.   Analysis

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

### A.   Statute of Limitations

Defendants contend that all of plaintiff's claims must be dismissed because the longest statute of limitations applicable to her claims is three years, and her complaint was filed three years and two days after the accrual of her claim—two days too late. To assess that contention, the Court must consider the relevant limitations period, the date the complaint was filed, and the date the claims accrued.

#### 1.   The Relevant Limitations Period

The complaint asserts eight counts: three federal civil rights claims under § 1983 (Counts 1, 5, and 6); a federal civil rights conspiracy claim under § 1985 (Count 7); a federal civil rights claim under § 1986 (Count 8); two state tort claims (Counts 2 and 4); and a state civil rights claim (Count 3).

Sections 1983 and 1985 create "private right[s] of action for redressing abridgments or deprivations of federal constitutional rights." *See McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.

1995).[4]  Sections 1983 and 1985 do not contain their own statute of limitations; under 42 U.S.C.

§ 1988, the court is to borrow a statute of limitations from the law governing the state tort most

closely analogous to the claim alleged.  *See McIntosh*, 71 F.3d at 33-34; *Poy v. Boutselis*, 352

F.3d 479, 483 (1st Cir. 2003).  The parties do not dispute that the appropriate statute of

limitations from which to borrow for the § 1983 and § 1985 claims is Mass. Gen. Laws ch. 260, §

2A, which provides for a three-year limitations period.

Unlike sections 1983 and 1985, section 1986 contains a one-year statute of limitations.  42

U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not

commenced within one year after the cause of action has accrued"); *see Burnett v. Grattan*, 468

U.S. 42, 45 n.5 (1984); *Creative Environments, Inc. v. Estabrook*, 491 F. Supp. 547, 554 (D.

Mass. 1980).

Counts 2 and 4 assert claims for defamation and intentional infliction of emotional distress

under Massachusetts law.  Such claims are subject to the three-year limitations period set forth in

Mass. Gen. Laws ch. 260, § 2A.

Count 3 asserts a claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch.

12, §§ 11H-I.  Such claims are subject to the three-year limitations period set forth in Mass. Gen.

Laws ch. 260, § 5B.

Plaintiff's claims are therefore time-barred unless they accrued less than three years from

the time she filed her complaint, except for her claim under § 1986, which is subject to a one-year

---

[4] Section 1983 prohibits the deprivation, by a person acting under color of state law, of a right secured by the constitution or laws of the United States.  Section 1985 prohibits conspiracies to deprive individuals of their civil rights by, on the basis of the individual's membership in a protected class:  (1) preventing them from holding federal public office via threat or force, (2) obstructing justice by threatening a potential witness, juror, or party to a state court action, and/or (3) depriving an individual of the rights or privileges (such as voting) secured by the laws of the United States.

limitations period.

### 2.      The Date of the Filing of the Complaint

The commencement of an action is governed by the Federal Rules of Civil Procedure.  "A civil action is commenced by filing a complaint with the Court."  *See* Fed. R. Civ. P. 3.  A complaint is "filed" by delivering it to the court clerk or to a judge who agrees to accept it and pass it along to the clerk.  *See* Fed. R. Civ. P. 5(d)(2).

When a complaint is mailed to the clerk's office, "filing is complete only upon the clerk's receipt" of the complaint.  *McIntosh*, 71 F.3d at 36.  "[M]erely placing a complaint in the mail does not constitute filing sufficient to mark the commencement of an action in a federal court." *Id.*[5]

Plaintiff's complaint was filed on November 24, 2006, when it was received by the clerk's office, and therefore any claims that accrued prior to November 24, 2003, are time-barred (or November 24, 2005, in the case of her claim under § 1986).[6]

### 3.      The Date of the Accrual of the Claims

### a.      Section 1983

A claim under § 1983 accrues "when a plaintiff knows or has reason to know of [her] injury."  *Poy*, 352 F.3d at 483, citing *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001); *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir. 1984).  A plaintiff does not have to

---

[5] A complaint may be filed in Massachusetts state court either by delivering the complaint to the clerk of court or mailing it to the clerk via certified or registered mail.  *See* Mass. R. Civ. P. 3.  When sent via certified or registered mail, the complaint is deemed to have been filed on the day it was sent.  *See McIntosh*, 71 F.3d at 36. The filing of a complaint in federal court, however, is governed by federal procedural rules.  *Id.*

[6] Because November 23, 2006 was a federal holiday, any claims accruing on November 23, 2003 (or November 23, 2005, in the case of the § 1986 claim), and filed on November 24, 2006 would not be time-barred. *See* Fed. R. Civ. P. 6(a).  However, as discussed below, no claims accrued on November 23, 2003 (or 2005).

possess actual knowledge of every element of the claim for it to accrue; instead, it accrues as soon as a plaintiff possesses "knowledge of the facts sufficient to put [her] on inquiry notice" of a possible claim. *Marrapese*, 749 F.2d at 937. A plaintiff thus has "a duty to exercise reasonable diligence to investigate and protect his rights" within the limitations period. *Id.* at 938.

A claim under § 1983 may encompass different types of component claims, each of which must be separately analyzed. *See Nieves*, 241 F.3d at 52-53 (holding that § 1983 claims premised on use of unreasonable force and false arrest were time-barred, but a claim premised on malicious prosecution was not). Here, plaintiff asserts claims under § 1983 based on both her arrest (which occurred on November 22, 2003) and her prosecution (which began with the filing of a criminal complaint on November 24, 2003).[7]

To the extent that plaintiff bases her § 1983 claim on her arrest, it is time-barred. A claim for wrongful arrest normally accrues on the date of the arrest. *See Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 (1st Cir. 1995). Plaintiff was arrested on November 22, 2003, more than three years prior to the filing of the complaint. As of that date, plaintiff knew that she had suffered physical injury; that her husband, although the aggressor, had not been arrested; that the police had rendered assistance to him in seeking a restraining order; that they were otherwise treating her husband more favorably than her; and that they were not addressing her domestic abuse as seriously as she believed was warranted. It is true that plaintiff did not know whether any similarly-situated persons (other than her husband) existed—but at that point she was put on notice of the existence of a potential claim, and she had three years in which to conduct an

---

[7] Plaintiff also asserts claims based on the two applications for restraining orders:  the original two-day order (applied for on November 22) and the subsequent longer order (applied for on November 24).

11

investigation.  Under the circumstances, any claim under § 1983 based on the arrest (or any other event occurring on or before November 22) is necessarily time-barred.[8]

The claim of selective prosecution, however, stands on a different footing.  An arrest and booking is not the commencement of a prosecution; a prosecution begins with legal process, such as the filing of a criminal complaint.  *See Nieves*, 241 F.3d at 54.  Here, a criminal complaint was not filed in the Dudley District Court until November 24.  It is not necessary to decide whether the claim accrued at the commencement of the prosecution or at its termination, as any § 1983 claim based on the prosecution was timely filed.  *Compare Padgett v. City of Monte Sereno*, 2007 U.S. Dist. LEXIS 24309 at *46 (§ 1983 claim for retaliatory and selective prosecution accrued at earliest when civil lawsuit and criminal prosecution were commenced) *with Nieves*, 241 F.3d at 53 (§ 1983 claim based on a theory of malicious prosecution did not accrue until termination of criminal proceedings in favor of accused).[9]

In summary, any § 1983 claim based on the arrest and other events of November 22 is time-barred; any claim based on the prosecution, which began on November 24, or subsequent events is not.

**b.      Section 1985**

---

[8]  The "continuing violation" doctrine is an equitable exception that saves otherwise time-barred claims if they are based on an ongoing series of acts anchored by similarity to some violation that is not time-barred.  *See O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001).  The purpose of the doctrine is to ensure that a plaintiff's claims are not foreclosed in circumstances where a plaintiff needed to see a pattern of mistreatment before becoming aware that earlier individual acts were, indeed, discriminatory.  *Id.*  The doctrine is not applicable here, because plaintiff was clearly aware that the police had treated her husband more favorably by the time of her arrest on November 22, and therefore should have been aware at that point of the need to assert her rights.  *Id.* at 731.

[9]  The § 1983 claim based on the November 24 application for a restraining order is likewise not time-barred.

A claim under § 1985 for conspiracy to violate civil rights accrues "separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of the injury)."  *See Nieves*, 241 F.3d at 51, citing *Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402, 404 (1st Cir. 1978).  It does not run from the date of the last overt act.  *Id.*  Thus, the claims for conspiracy to deprive plaintiff of her civil rights under § 1985 are essentially treated identically to claims under § 1983.  Accordingly, her claims alleging conspiracy by means of wrongful arrest are time-barred, but the claims for conspiracy based on selective prosecution are not.

### c.   <u>Section 1986</u>

The factual basis of the claim under § 1986 is far from clear.  The statute creates a right of action against a party who, "having knowledge that any of the wrongs" in furtherance of a conspiracy prohibited by § 1985 "are about to be committed," and "having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so."  42 U.S.C. § 1986.  As noted, the claim under Section 1986 is subject to a one-year limitation period, and thus must have accrued at some point on or after November 24, 2005.

Plaintiff's only reference to this claim in her memorandum in opposition to defendants' motion for summary judgment is cryptic.  She states, without explanation, that the "allegation the defendants knew wrongs were being committed against her and did nothing came as a result of information she obtained at her December 6, 2005 court appearance."  (Pl. Mem. at 8).  She does not state what she learned on December 6, and makes no effort to explain why she could not have learned of the potential claim at any earlier point.  No evidence in the record is cited to support that claim.

In any event, by November 23, 2005, plaintiff had been arrested; she had been restrained by the District Court; she had been prosecuted; and she had lost custody of her children. Any claim under § 1986 against the police officers or the town based on those episodes had accrued well before that time. The claim under § 1986 is therefore time-barred.[10]

### d.   **Defamation**

The factual basis of plaintiff's defamation claim is likewise far from clear. Defamation is the "publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." *See Draghetti v. Chmielewski*, 416 Mass. 808, 812 (1994), *quoting Correllas v. Viveiros*, 410 Mass. 314, 319 (1991). Under Massachusetts law, a plaintiff must prove the following elements to establish a claim for defamation: (1) the defendant made a statement concerning the plaintiff to a third party; (2) the statement could damage the plaintiff's reputation in the community; (3) the defendant was at fault in making the statement; and (4) the statement either caused the plaintiff economic loss or is actionable without proof of economic loss. *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-30 (2003).

Plaintiff's memorandum in opposition to defendants' motion for summary judgment does not discuss the claim at all, and no supporting fact is identified in her separately-filed statement of facts. In her deposition, plaintiff seemed to suggest that the defamation claim was based on statements made by an unnamed police officer to her brother on the day of her arrest. (Ex. 14 at 221). She did not, however, identify any actual statement, defamatory or otherwise, and could not identify any other negative statements or communications that had been made by any of the

---

[10]   In addition, to the extent that any claim under § 1985 fails, the dependent cause of action under § 1986 must fail as well. *See Dowsey v. Wilkins*, 467 F.2d 1022, 1026 (5th Cir. 1972); *Armstrong v. School District*, 597 F.Supp. 1309, 1314 (E.D. Pa. 1984).

police officer defendants.  (*Id.* at 221-22).

Accordingly, it appears that any defamatory statement was made, if at all, on November 22, 2003.  The defamation claim therefore accrued on that date, and is time-barred.

### e.       Intentional Infliction of Emotional Distress

The factual basis of plaintiff's claim for intentional infliction of emotional distress is equally unclear.  Under Massachusetts law, a plaintiff must prove the following elements to establish a claim for intentional infliction of emotional distress:  (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the defendant's actions were the cause of the plaintiff's distress; and (4) the plaintiff's emotional distress was severe and of such a nature that no reasonable person could be expected to endure it.  *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 706 (2000), *quoting Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976).

Again, plaintiff does not discuss the claim in her memorandum in opposition to defendants' motion for summary judgment.  To the extent that the claim is based on the events of November 22, 2003, or any earlier event, it is time-barred.  To the extent it is not time-barred, for the reasons set forth below, the actions of the defendants on or after November 24, 2003, do not rise to the level of "extreme and outrageous" conduct.

### f.       Massachusetts Civil Rights Act

The Massachusetts Civil Rights Act provides a right of action against individuals who interfere or attempt to interfere with another's rights under either the constitution or laws of the

15

United States or the Commonwealth.  Mass. Gen. Laws ch. 12, §§ 11H-I.  A plaintiff must prove the following to establish a claim under the MCRA:  (1) that her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation, or coercion.  *Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989).  A "threat" "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm."  *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994) (citations omitted), cert. denied, 513 U.S. 868 (1994).  "Intimidation" involves "putting in fear for the purpose of compelling or deterring conduct."  *Id.* (citations omitted).  "Coercion" involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."  *Id.*

Again, plaintiff does not mention the MCRA claim in her opposing memorandum, does not address the issue in her statement of facts, and does not anywhere indicate what she contends were the relevant acts of threat, intimidation, or coercion.  To the extent that any acts of threat, intimidation, or coercion occurred, they appear to have occurred in connection with her arrest on November 22, 2003.  The MCRA claim is, therefore, time-barred.

### B.   The Sufficiency of the Claims That Are Not Time-Barred

Once the time-barred claims are eliminated, what remains is the following:  (1) the claims under § 1983 arising out of the prosecution (and any other events occurring on or after November 24, 2003); and (2) the related claims under § 1985.  Those claims will now be examined on their merits.

### 1.   The Section 1983 Claim against Poplawski, Hutchinson, DiDonato, and Ceppetelli

16

Plaintiff's opposition papers refer frequently to the fact that the "police" engaged in certain acts, without actually identifying what particular officers engaged in what particular conduct. The complaint names five police officers other than the Chief of Police: Dean Poplawski, James Hutchinson, Anthony DiDonato, Paul Ceppetelli, and David Carpenter.[11] Officer Poplawski is not even mentioned in plaintiff's opposition papers; if he had any role in the events of November 22, it is not set forth in the record.[12] Officers Hutchinson, DiDonato, and Ceppetelli appear to have participated only in the arrest and the obtaining of the two-day restraining order, also on November 22.[13] Only Officer Carpenter, who signed the application for the criminal complaint, appears to have had personal involvement in the events of November 24.

Accordingly, any claim under § 1983 against Poplawski, Hutchinson, DiDonato, or Ceppetelli that is not time-barred (that is, because the claim accrued before November 24) fails for lack of evidence. The remaining claims against Officers Carpenter and Chief Wojnar are addressed below.

## 2.   The § 1983 Claim against Carpenter

Plaintiff alleges that Officer Carpenter selectively prosecuted her because she is a Latin woman, even though he was aware that she had committed no crime. *See, e.g.*, Complaint ¶ 16

---

[11] The complaint also names "other as yet unnamed officers of the Dudley Police Department." Plaintiff apparently has not identified any such additional officers, and therefore summary judgment will be granted as to any claim against unnamed or otherwise unidentified police officers.

[12] Officer Poplawski also served a restraining order on Oscar in December 2004. Presumably, the act of serving a restraining order upon Oscar—requested by Gloria—did not deprive her of her rights in any way.

[13] Plaintiff alleges that in 2002 Officer Hutchinson refused to take a complaint from Gloria concerning Oscar's violation of a restraining order, saying that Officer Carpenter was assigned to the case and that Gloria would have to talk to him. That event, however, occurred well more than three years prior to the complaint. Other mentions of Officers Hutchinson, DiDonato, and Ceppetelli in the record concern events occurring before November 22, 2003, or do not appear to raise any possibility of discrimination against Gloria.

("The Defendants knew well that it was Plaintiff's husband and not Plaintiff who was the

perpetrator of domestic violence"); ¶ 46 (". . . Carpenter . . . intentionally, willfully, and recklessly

and repeatedly harassed, abused and humiliated Plaintiff Gloria Salcedo although [he] knew she

committed no crime and failed to prosecute Plaintiff's Husband for the crimes [he] knew he

committed for the impermissible reasons [*sic*] of gender bias").  The claim of selective

prosecution is thus based in part on the treatment of her husband.  In addition, plaintiff points to

two instances in the fall of 2003 where Dudley police were called to the scene of potential

domestic violence incidents, and contends that the police behaved more appropriately to the white

female caller (in one incident) and white male caller (in the other incident) than they did to her.

In short, plaintiff's selective prosecution claim is premised on the notion that she

committed no crime, and the police had no probable cause to file a criminal complaint.  Even

assuming that plaintiff has developed facts sufficient to demonstrate the existence of differential

treatment of similarly-situated persons, there several problems with that theory.

First, after the incident, plaintiff admitted to sufficient facts to support a finding of guilty

for assault and battery, leading to a continuance without a finding ("CWOF") and one year of

probation.  A § 1983 claim is not cognizable if its success would necessarily imply the invalidity of

an underlying conviction or sentence.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  It

does not appear that the First Circuit has addressed the issue of whether an admission to sufficient

facts and CWOF constitutes a conviction for the purposes of the *Heck* limitation on subsequent §

1983 actions.[14]  However, at least five other circuits have held that a deferred adjudication or plea

---

[14] "An admission to sufficient facts followed by a continuance without a finding is not a conviction under
Massachusetts law." *Commonwealth v. Villalobos*, 437 Mass. 797, 802 (2002).  However, an admission to
sufficient facts and CWOF is treated as a conviction for some purposes under federal law.  *See, e.g., id.* at 798

of *nolo contendere* constitutes a conviction for the purposes of *Heck*. *See Deleon v. City of Corpus Christi*, 488 F.3d 649, 652-653, 656 (5th Cir. 2007) (deferred adjudication under Texas law); *Gomez v. City of Whittier*, 211 Fed. Appx. 573, 575 (9th Cir. Nov. 30, 2006) (*nolo contendere* under California law); *Jackson v. Loftis*, 189 Fed. Appx. 775 (10th Cir. July 25, 2006) (*nolo contendere* and deferred sentence under Oklahoma law); *Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275 (3d Cir. Apr. 19, 2006) (*nolo contendere* under Pennsylvania law); and *Nicholson v. City of Westlake*, 20 Fed. Appx. 400 (6th Cir. Sept. 24, 2001) (*nolo contendere* under Ohio law).  The Court sees no reason why a plea to sufficient facts—which is a formal admission of guilt in open court—should be treated any differently, even if the result is not a criminal conviction under state law.

Second, and even if *Heck* does not bar her § 1983 claim, the fact remains that plaintiff did, in fact, admit in open court to sufficient facts to establish a crime.  That is directly inconsistent with her claim here that she was prosecuted for discriminatory reasons despite the fact that she committed no crime.  The doctrine of judicial estoppel prevents a litigant from pressing a claim that is directly inconsistent with a position taken by that litigant, and adopted by the court, in a prior legal proceeding.  *See Muskat v. United States*, 554 F.3d 183, 196 (1st Cir. 2009).

Third, a police officer enjoys qualified immunity for acts undertaken in his official capacity.  The Supreme Court has recognized that civil rights suits may result in "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service."  *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 816 (1982); *see also*

---

(noting that 8 U.S.C. § 1101(a)(48)(A) treats a CWOF as equivalent to a conviction for immigration purposes); *United States v. DiPina*, 178 F.3d 68 (1st Cir. 1999) (admission to sufficient facts treated as conviction under federal sentencing guidelines).

*Buenrostro v. Collazo*, 973 F.2d 39, 42 (1st Cir. 1992).  The qualified-immunity doctrine shields

public officials from liability for civil rights violations so long as "their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."  *Harlow*, 457 U.S. at 818; *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987);

*Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir. 1998).

The doctrine "leaves ample room for mistaken judgments."  *Berthiaume v. Caron*, 142

F.3d 12, 15 (1st Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).  The question

is not whether some right has been clearly established at a highly abstract level—for example, the

right to be free from unreasonable searches and seizures—but "whether, under the circumstances

that confronted the official, 'a reasonable official would understand that what he is doing violated

that right.'" *Id.* (quoting *Creighton*, 483 U.S. at 640).

Thus, an official may enjoy qualified immunity even though his conduct actually abridged a

constitutional right.  *Berthiaume*, 142 F.3d at 15; *Joyce v. Town of Tewksbury*, 112 F.3d 19, 23

(1st Cir. 1997) (officials are "'entitled to qualified immunity [so long as] their decision was

reasonable, even if mistaken'") (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Rakovich

v. Wade*, 850 F.2d 1180, 1214 (7th Cir. 1988) (a decision that officers are immune "is not a

decision that the officers infringed no [constitutional] interests of [the plaintiff]").  Indeed, when

properly applied, the doctrine of qualified immunity "'provides ample protection to all but the

plainly incompetent or those who knowingly violate the law.'" *Cox v. Hainey*, 391 F.3d 25, 31

(1st Cir. 2004) (quoting *Briggs*, 475 U.S. at 341).[15]

---

[15]  Whether an official's actions are protected under the doctrine is "an issue that is appropriately decided
by the court during the early stages of the proceedings and should not be decided by the jury." *Tatro v. Kervin*, 41
F.3d 9, 15 (1st Cir. 1994).  The qualified-immunity analysis consists of the following three inquiries:  (1) "whether
the plaintiff's allegations, if true, establish a constitutional violation;" (2) "whether the constitutional right at issue

To the extent Carpenter mistakenly advised the Dudley District Court that probable cause existed to prosecute Gloria, his actions are protected by qualified immunity. It is difficult to see how that prosecution—even if mistaken—could be objectively unreasonable when plaintiff herself had already admitted to having struck Oscar with a baby monitor, effectively admitting the existence of probable cause.

Of course, an act of selective prosecution based on *intentional* gender or ethnic discrimination would not be subject to a defense of qualified immunity. An objectively reasonable police officer would understand that such conduct violates a clearly-established constitutional right. To the extent, therefore, that there is evidence to support a claim of intentional discrimination against Carpenter, qualified immunity does not apply.

But the problem for plaintiff under that theory is that there is simply no evidence that Carpenter engaged in an act of intentional discrimination. He did not participate in the arrest of Gloria Salcedo. He did not interview either Gloria or Oscar. There is evidence that the DSS representative spoke to "the police" on Sunday afternoon, but no evidence that it was Carpenter to whom she spoke, or that another officer relayed that information to him. And there is no evidence that Carpenter treated any other domestic violence cases any differently; he did not participate in the police responses to other domestic abuse victims that plaintiff cites.

In summary, the remaining § 1983 claims against Officer Carpenter cannot survive plaintiff's formal admission in a court of law that she committed the crime of assault and battery,

---

was clearly established at the time of the putative violation;" and (3) "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004)).

and otherwise are not supported by the evidence.  Defendants' motion for summary judgment will therefore be granted with respect to the selective prosecution claim under § 1983.[16]

### 3.    The Section 1985 Claim

Plaintiff alleges a conspiracy to violate her civil rights under 42 U.S.C. § 1985(3).[17]  To succeed on a claim pursuant to § 1985(3), plaintiff must prove that (1) the defendants conspired, (2) with the intent to deprive her, directly or indirectly, of equal protection of the laws, (3) committed an act in furtherance of the conspiracy, and (4) that plaintiff or her property was injured or that plaintiff was deprived of exercising any right or privilege of a citizen of the United States.  *See Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005).  To prove the claim requires specific factual evidence of a "meeting of minds" among conspirators.  *Id*, citing *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988).

The § 1985 claim fails as to Carpenter for essentially the same reason as to the § 1983 claim.  In substance, plaintiff contends that Carpenter conspired to deprive her of her constitutional rights by prosecuting her without probable cause to believe she had committed a crime.  Even assuming the existence of an agreement to do so, her subsequent judicial admission that probable cause existed necessarily negates her claim.

---

[16] The claims based on Officer Carpenter's application for a restraining order on November 24 necessarily fail for the same reason.  If plaintiff committed assault and battery on her husband on November 22, there was clearly a basis for seeking a restraining order the following Monday.

[17] The complaint alleges claims under both section 1985(2) and 1985(3).  Section 1985(2) provides a right of action where two or more people "conspire to deter, by force, intimidation, or threat, any party or witness . . . from attending court, or from testifying to any matter pending therein . . . ."  *See* 42 U.S.C. § 1985(2).  The complaint alleges that several officers intimidated her into not testifying in a case unrelated to the Salcedos, in which some of the officers were accused of wrongdoing.  There appears to be no evidence in the record concerning this issue, and plaintiff appears to have abandoned the point.  Summary judgment will therefore be granted as to claims brought under § 1985(2).

### 4.      The Claim against the Town

Plaintiff alleges that the Town of Dudley and Chief Wojnar were deliberately indifferent to the need for training, supervision, and discipline of the defendant police officers.  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978).  "[L]iability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury."  *Kelley v. Laforce*, 288 F.3d 1, 9 (1st Cir. 2002), citing *Monell*, 436 U.S. at 690-691.

In some instances, the "policy or custom" may consist of the manner in which employees are supervised.  A municipality may be liable under § 1983 for failing to train, supervise, or discipline an employee, but only if (1) that failure causes a constitutional violation that results in an injury and (2) the failure amounts to "deliberate indifference" to the rights of persons with whom the employee comes into contact.  *See DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2005), citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) and *Bordanaro v. McLeod*, 871 F.2d 1151, 1159 (1st Cir. 1989).

As for the first prong, "courts must be very careful in assessing causation and must apply a stringent standard:  the identified deficiency in a city's training program must be closely related to the ultimate injury."  *See Young v. City of Providence*, 404 F.3d 4, 29 (1st Cir. 2005). To survive summary judgment, it must be possible for the jury to find that in the circumstances of the case, officer training would have made a difference as to whether or not plaintiff's rights were violated.  *Id*.  As for the second prong, "deliberate indifference will be found where the municipality fails to provide adequate training notwithstanding an obvious likelihood that inadequate training will

result in the violation of constitutional rights." *See Whitfield v. Melendez-Rivera*, 431 F.3d 1, 10 (1st Cir. 2005).[18]

Here, plaintiff has produced some evidence to show that officers did not have, or did not remember, any training on how to respond to domestic violence calls, or did not understand basic principles of a proper police response to such situations. There is no evidence, however, that any such failures by the town caused an actionable constitutional violation. The only potential constitutional claims that are not time-barred are those against Carpenter relating to the events of November 24. But any such claim fails for the reasons stated above. Without any actionable violations, the alleged lack of training, by itself, is not enough to support a claim. Summary judgment will therefore be granted with respect to the claim against the city.

### 5.      The Claims against Police Chief Wojnar

Chief Wojnar apparently did not participate at all in the events at issue, and is named solely in his capacity as the supervisor of the police department. *Respondeat superior* cannot serve as the basis for supervisor liability in an action under § 1983. *See Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir. 1999). For supervisory liability to attach, the plaintiff must show an affirmative link between the constitutional violation and the supervisor's actions and omissions, "whether through direct participation or through conduct that amounts to condonation or tacit authorization." *Id* at 44.

Under 42 U.S.C. § 1983, a supervisory official may be held liable for the

---

[18] An obvious likelihood, of which municipal officials knew or should have known, can be shown by a pattern of prior constitutional violations in similar circumstances. *See Young*, 404 F.3d 4, 28 (1st Cir. 2005). "[L]iability without such a pattern will be appropriate in a narrow range of circumstances, where a violation of a federal right is a highly predictable consequence of a failure . . ." to adequately train law enforcement officers to handle a situation which officers are likely to confront once or more in the course of their duties. *Id. Accord City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

> behavior of his subordinates only if (1) the behavior of his subordinates
> results in a constitutional violation, and (2) the supervisor's action or
> inaction was affirmatively linked to that behavior in the sense that it could
> be characterized as supervisory encouragement, condonation or
> acquiescence or gross negligence amounting to deliberate indifference.

*See Pineda v. Toomey*, 533 F.3d 50, 53 (1st Cir. 2008) (internal citations and quotations

omitted).  A finding of deliberate indifference requires a showing that it would be "obvious to any

reasonable official that his conduct was very likely to violate an individual's constitutional rights."

*Id.*  Plaintiff here has produced no such evidence, and therefore has not met this high burden with

respect to Chief Wojnar.[19]

## IV.  Conclusion

In summary, most of plaintiff's claims fail by reason of the statute of limitations; others

because she has failed to proffer any evidence (or even legal argument) in their support; and the

remainder because the evidence that was proffered is not sufficient to support her claims.

Defendants' motion for summary judgment must therefore be granted.  The Court does not

thereby intend to suggest that the subject of domestic abuse is not important, or that a police

failure to take domestic abuse seriously because of gender or ethnic discrimination would not

merit judicial relief.  The law, however, provides a three-year window in which to file a lawsuit,

and a plaintiff who fails to do so cannot proceed, no matter how meritorious her claim may be.

Accordingly, and for the foregoing reasons, defendants' motion for summary judgment is

---

[19] *Accord Bowen v. City of Manchester*, 966 F.2d 13, 21 (1st Cir. 1992), where the police chief's knowledge of an intoxicated detainee's suicide in the holding cells in prior years, his failure to install video monitoring equipment that looked into each of the holding cells as opposed to merely at the hallway between the cells, his failure to order training in screening potential of suicides for his officers, and his failure to staff the police station properly (the standard operating procedure was for the houseman—the police officer in charge of checking on detainees in the holding cells every 15 minutes—to go pick up recent arrestees, thereby leaving the holding cells temporarily unsupervised), taken together, were insufficient to establish that the chief was deliberately indifferent and therefore could be held liable for plaintiff's holding cell suicide.

GRANTED.

**So Ordered.**

       /s/ F. Dennis Saylor
       F. Dennis Saylor IV
       United States District Judge

Dated: March 20, 2009